UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

FILED - CLERK
U.S. DISTRICT COURT
2004 FEB 11 PM 3: 59
TX EASTERN - LUFKIN
BY _____

| | | |
|---|---|---|
| BURNS, MORRIS & STEWART LIMITED PARTNERSHIP, P.O. Box 631247 1124 Bennett Clark Road Nacogdoches, TX 75963 Plaintiff, | ) ) ) ) ) ) | |
| vs. | ) ) | Civil Action No. 9:04cv23 |
| ENDURA PRODUCTS, INC. 8817 West Market Street Colfax, NC 27235 | ) ) ) | Judge JUDGE LEONARD DAVIS |
| Defendant. | ) | |

## COMPLAINT AND JURY DEMAND

Plaintiff, Burns, Morris & Stewart Limited Partnership ("BMS"), by and through its attorneys, hereby complains and alleges against Defendant, Endura Products, Inc. ("Endura") as follows:

### PARTIES

1. Plaintiff BMS is a Limited Partnership organized under the laws of Texas and having its principal place of business at 1124 Bennett Clark Road, Nacogdoches, Texas 75961.

2. Defendant Endura is a North Carolina Corporation having its principal place of business at 8817 West Market Street, Colfax, NC 27235.

## JURISDICTION & VENUE

3. This is a claim for patent infringement arising under the patent laws of the United States as set forth in Title 35 of the United States Code. This Court has jurisdiction over the subject matter of the present claims pursuant to 28 U.S.C. §§1331 and 1338(a).

4. Venue against Defendant Endura is proper in this District pursuant to 28 U.S.C. §1400(b). Upon information and belief, Defendant either resides or has committed acts of infringement in this district.

5. Defendant Endura is subject to personal jurisdiction in this judicial district because it is doing business and/or has caused injury to Plaintiff in this district.

## THE PATENTS AT ISSUE

6. Plaintiff BMS is the assignee and owner of United States Patent No. 5,873,209 ("the '209 patent") entitled "FRAME WITH INTEGRAL ENVIRONMMENT RESISTANT MEMBERS" and United States Patent No. 5,950,391 ("the '391 patent") entitled "FRAME WITH INTEGRAL ENVIRONMENT" (collectively "the BMS patents").

7. The '209 patent was filed on April 22, 1997, and was duly and properly issued on February 23, 1999. The '209 patent is hereby incorporated by reference herein, and a copy is appended hereto as Exhibit A.

8. The '209 patent is a continuation of United States Patent No. 5,661,943 that claims a priority filing date of March 8, 1996.

9. The '391 patent was filed on August 6, 1998, and was duly and properly issued on September 14, 1999. The '391 patent is hereby incorporated by reference herein, and a copy is appended hereto as Exhibit B.

10. The '391 patent is a continuation of United States Patent No. 5,873,209 that claims a priority filing date of March 8, 1996.

## CLAIM

11. Plaintiff BMS adopts, realleges and incorporates by reference, as if fully set forth herein, Paragraphs 1 through 10 of this Complaint.

12. Defendant has knowledge of the Plaintiff's '209 and '391 patents.

13. Defendant manufactures and sells doorframes and/or doorframe components having a moisture resistant lower portion, or portions.

14. By making, selling and/or offering to sell said side jambs and/or said door frames, Defendant is infringing, and contributing to the infringement and/or inducing the infringement of the BMS patents.

15. Defendant's acts of infringement have caused, are causing, and will continue to cause irreparable injury to Plaintiff BMS.

16. Defendant's acts of infringement have been willful and deliberate.

**WHEREFORE**, Plaintiff BMS respectfully demands judgment from this Court against Defendant, its successors, subsidiaries, affiliates, officers, agents, servants, employees, and all persons in active concert or participation as follows:

(A) An order and/or declaration that Defendant has and is continuing to infringe one or more claims of the BMS patents;

(B) An injunction, permanently enjoining Defendant, its successors, subsidiaries, affiliates, officers, agents, servants, employees and all persons in active concert or participation with it, each and all of them, from infringing, inducing the infringement, and/or contributing to the infringement of the BMS patents;

(C) An award of damages to Plaintiff BMS, sufficient to adequately compensate Plaintiff for all of Defendant's acts of infringement;

(D) A finding that said infringement by Defendant is willful and deliberate, and a corresponding award of increased damages to Plaintiff BMS as provided therefore under 35 U.S.C. §284;

(E) An award of prejudgment interest to Plaintiff BMS on all sums recovered from Defendant;

(F) A finding that this case is exceptional under 35 U.S.C. §285, and that Plaintiff BMS is thereby entitled to its costs and attorney's fees incurred in bringing this action against Defendant;

(G) An order directing Defendant to file with the Court and serve upon Plaintiff BMS within thirty (30) days after the issuance by this Court of any injunction, a report, in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with said injunction; and

(H) An award to Plaintiff BMS of such other and future relief as may be provided by law.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff BMS hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

Dated: 02-11, 2004

Local Counsel to Plaintiff, BURNS, MORRIS & STEWART LIMITED PARTNERSHIP

Claude E. Welch
115 West Shepherd Avenue
P.O. Box 1574
Lufkin, TX 75902-1574
(936) 639-3311
(936) 639-3049 FAX
welchlawoffice@txucom.net

Steve Roper
Zeleskey, Cornelius, Hallmark, Roper & Hicks, L.L.P.
1616 South Chestnut Street
P.O. Drawer 1728
Lufkin, TX 75902-1728
(936) 632-3381
(936) 632-6545 FAX
sroper@zeleskey.com

Jeffrey S. Standley, Ohio Bar No. 0047248
F. Michael Speed, Jr.
STANDLEY LAW GROUP LLP
495 METRO PLACE SOUTH, SUITE 210
DUBLIN, OHIO 43017
(614) 792-5555
(614) 792-5536 FAX
jstandley@standleyllp.com
mspeed@standleyllp.com
Trial Attorney for Plaintiff, BURNS, MORRIS & STEWART LIMITED PARTNERSHIP

US005873209A

# United States Patent [19]

## Hagel

[11] Patent Number: 5,873,209
[45] Date of Patent: *Feb. 23, 1999

[54] **FRAME WITH INTEGRAL ENVIRONMENT RESISTANT MEMBERS**

[75] Inventor: **Richard C. Hagel**, Nacogdoches, Tex.

[73] Assignee: **Burns, Morris & Stewart Limited Partnership**, Nacogdoches, Tex.

[ * ] Notice: The term of this patent shall not extend beyond the expiration date of Pat. No. 5,661,943.

[21] Appl. No.: **837,776**

[22] Filed: **Apr. 22, 1997**

### Related U.S. Application Data

[63] Continuation of Ser. No. 612,757, Mar. 8, 1996, Pat. No. 5,661,943.

[51] Int. Cl.⁶ .................................................. E04C 2/38
[52] U.S. Cl. ................... **52/656.4**; 52/170; 52/656.2; 52/204.66; 52/204.7; 52/515
[58] Field of Search ...................... 52/656.2, 656.4, 52/656.7, 204.62, 204.66, 204.7, 170, 515

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2,281,864 | 5/1942 | Toothacre . |
| 2,292,301 | 8/1942 | Smith . |
| 2,292,806 | 8/1942 | Toothacre . |
| 2,781,559 | 2/1957 | Savoie . |
| 2,854,843 | 10/1958 | Lamb . |
| 2,898,642 | 8/1959 | Elling . |
| 3,690,082 | 9/1972 | Byland . |
| 3,769,773 | 11/1973 | Mochizuki . |
| 3,808,759 | 5/1974 | Carmichael . |
| 3,812,621 | 5/1974 | Ragland . |
| 5,074,092 | 12/1991 | Norlander . |
| 5,365,708 | 11/1994 | Winston . |
| 5,437,130 | 8/1995 | Raynak . |
| 5,546,715 | 8/1996 | Edstrom . |
| 5,553,438 | 9/1996 | Hsu . |

#### OTHER PUBLICATIONS

Article published in Wood Digest entitled. "Extrusion Process May Shape Component Manufacturing Future", four pages.

*Primary Examiner*—Christopher Kent
*Assistant Examiner*—Yvonne Horton-Richardson
*Attorney, Agent, or Firm*—Standley & Gilcrest

[57] **ABSTRACT**

A construction component for improved moisture, decay and insect resistance. The component preferably includes a plurality of members of which certain portions are comprised of materials resistant to moisture, decay and insects. The resistant member(s) are integrally connected to wood portion(s) to provide a single, low cost structure.

**20 Claims, 1 Drawing Sheet**





Fig. 1

Fig. 2

# FRAME WITH INTEGRAL ENVIRONMENT RESISTANT MEMBERS

This application is a continuation of U.S. patent application Ser. No. 08/612,757 filed Mar. 8, 1996, now U.S. Pat. No. 5,661,943 entitled FRAME WITH INTEGRAL ENVIRONMENT RESISTANT MEMBERS by Richard C. Hagel.

## FIELD OF THE INVENTION

The invention relates to frames such as door or window frames, or other components such as porch posts, brickmolds, and casings, and particularly to components having integrally connected portions resistive to moisture, decay and insects.

## BACKGROUND OF THE INVENTION

The construction industry is under constant pressure to provide quality products at low cost. Door frames and other construction components are no exception.

During construction of a home or the like, an opening is left in the wall in which the door or window is installed. In some cases, a custom door frame is built in the door opening. After the door frame is built, the door is hung within the door frame. While this provides builders complete control, such a construction technique can be time consuming and costly. Measurements and construction must be very precise to accurately place the door frame into the opening and account for small variations in the door.

Another method of hanging frames is with the use of pre-hung doors or windows. In this case, a completed frame and door is provided to the builder. An example of an adjustable door frame assembly is found in U.S. Pat. No. 3,812,621. Thus, the frame and door are pre-matched for tighter fitting door or windows.

One known method of providing pre-built frames at a low cost is with the use of scrap lumber. Scrap lumber is produced when a defect, such as a knot hole or imperfect edge, is removed from a larger or parent piece of lumber. This allows the parent lumber to be sold as a higher quality piece than it otherwise would. The resulting scrap piece containing the defect is typically much smaller than its parent piece. The scrap lumber is then processed or recycled by removing the defect to produce a relatively small, but still good quality piece of wood fiber. These small pieces are then finger jointed at their ends and joined end to end to produce a single long piece, which is used to produce the door frame.

Norlander in U.S. Pat. No. 5,074,092 describes a technique for overcoming certain deficiencies with inexpensive lumber having a variety of knots and other defects. Quality veneers are assembled with cores of short end-to-end staves of solid lumber to produce a laminated wood door product having stability and good appearance.

While these techniques have produced low cost door and window frames, the use of wood in them causes the frames to be susceptible to moisture and insects. In the past, once water or termite damage has caused a portion of the frame to decay, that portion of the frame was replaced. Repair was performed while the frame was in place. A craftsman would cut out the decayed portion and replace it with another wood or plastic section. Thus, while costs were initially low, the end result was often expensive.

## SUMMARY OF THE INVENTION

The present invention is a component having durable, yet cost effective characteristics not found in the prior art. In the preferred embodiment, a construction component is comprised of a first section and second section. The second section is comprised of a material that is durable and moisture, decay and insect resistant. The first section is comprised of wood. The wood and durable portions are connected end to end with a glued finger joint or other mechanical connection to assemble the component. Associated hardware may also be added.

## BRIEF DESCRIPTION OF THE DRAWINGS

A better understanding of the present invention can be obtained when the following detailed description of the preferred embodiment is considered in conjunction with the following drawings, in which:

FIG. 1 is an isometric view of a door frame system according to a preferred embodiment of the present invention; and

FIG. 2 is a side view of a side portion of the door frame of FIG. 1.

## DETAILED DESCRIPTION OF PREFERRED EMBODIMENT

Referring now to FIG. 1, there is illustrated a door frame F embodying the principles of the present invention. The door frame F is comprised of spaced vertical side jambs 1 and 2 connected together at the top by a horizontal top jamb 3. One side jamb 1 includes a suitable number of hinge recesses 4 formed in it to mount hinges on while the opposite side jamb 2 is used to mount a strike plate. Each of the jambs 1, 2 and 3 have an L-shaped shoulder 5 on an interior surface for capturing a door.

Each of the side jambs 1 and 2 are formed from an upper wood portion 6 and a lower durable portion 7. The wood portions 6 are formed from a number of smaller wood pieces 6a–6g. Side jamb 1 includes wood pieces 6a, 6b and 6c and side jamb 2 includes wood pieces 6d, 6e, 6f and 6g. The wood pieces 6a–6g are formed from what originally were pieces of scrap lumber which have been processed or recycled to remove imperfections, such as knots, bark or uneven surfaces. As shown, the wood pieces 6a–6g are not necessarily of even length and the side jambs 1 and 2 may comparatively include an unequal number or wood pieces. However, the number of pieces 6a–6g is not so many as to jeopardize overall strength of the frame F.

Top jamb 3 is formed from a number of smaller wood pieces 3a and 3b in a manner similar to wood portion 6.

The durable portion 7 may be an extruded wood-based product, such as STRANDEX®, ERT®, TREX® or the like, which can be shaped using conventional wood processing techniques, painted or stained. The durable portion may also be made of plastic, vinyl, metal and combinations of any of these materials. The durable portion 7 has the characteristics of being moisture, decay and insect resistant. Side jamb 1 includes a durable piece 7a and side jamb 2 includes a durable piece 7b. The placement of the durable portion 7 on the lower portion of the frame prevents all but the most severe weather and insect damage suffered by prior art door frames. The durable pieces 7a and 7b may be proportioned based on the expected exposure to adverse conditions such as rain, snow or insects. Thus, the assembly of the wood portion 6 and the durable portion 7 provides a durable, yet cost effective door frame. It is noted that other materials, such as plastic or similar extrusions, can be used for the durable pieces to achieve the principles of the present invention.

3

In the assembly of the side jambs 1 and 2, the durable pieces 7 are preferably connected end to end by a glued finger joint 10 to the wood portions 6. One of the joints 10 is illustrated more clearly in FIG. 2. Referring now to FIG. 2, wood piece 6g includes a number of fingers 11 protruding from an end face and durable piece 7b has a corresponding number of mated fingers 12 protruding from an adjacent end face. It should be understood that other wood joints are contemplated, such as edge gluing or their equivalents.

Referring back to FIG. 1, it is there illustrated that the wood pieces comprising the wood portion 6 are also finger jointed so that the assembly of the wood portion 6 with the durable portion 7 forms a complete side jamb 1 or 2.

In the assembly of the door frame F, the top jamb 3 is connected to the side jambs 1 and 2 with a corner joint 13. After assembly of the door frame F, the door frame F is ready for placement into a door opening of a wall. Thereafter, hinges may be attached at recesses 4 to the door frame F and a strike plate added to mount and receive a door. In use, the moisture, decay and insect resistant features of the door frame F prevent the problems associated with the prior art door frames.

It is noted that the use of the present invention is not limited to door frames. The invention may be used in window frames, garage door frames, porch posts, casings, brickmolds and other applications where wood is heavily subjected to weather or insects, but a cost effective solution is desired. Further, it is noted that solid stock lumber can be used in place of pieces 6a–6g without detracting from the principles of the present invention. It is also noted that further weather and insect protection can be afforded by chemically treating the wood pieces, although at a somewhat higher cost.

In describing the invention, reference has been made to a preferred embodiment and illustrative advantages of the invention. However, those skilled in the art and familiar with the disclosure of the present invention may recognize additions, deletions, modifications, substitutions, equivalents and other changes may be made without departing from the spirit of the invention.

What is claimed is:

1. A frame, comprising:

   a top jam;

   two side jambs having upper and lower portions that are integrally formed, said upper portion being made of wood, said lower portion being a durable moisture, decay, and insect resistant material made from a second material.

2. The frame of claim 1, wherein said second material is plastic.

4

3. The frame of claim 1, wherein said second material is vinyl.

4. A construction component comprising:

   a first portion and a second portion that are integrally joined, said first portion being made of wood, said second portion being a durable material made from a second material selected from the group consisting of materials other than wood, materials other than wood in formulation with wood particles, and wood adapted to be moisture, decay, and insect resistant.

5. The construction component of claim 4, wherein the construction component is a brickmold.

6. The construction component of claim 4, wherein the construction component is a porch post.

7. The construction component of claim 4, wherein the construction component is a casing.

8. The construction component of claim 4, where in the second portion is entirely plastic.

9. The construction component of claim 4, where in the second portion is entirely vinyl.

10. The construction component of claim 4, where in the second portion is entirely metal.

11. The construction component of claim 4, where in the second portion is entirely plastic based composition.

12. The construction component of claim 4, where in the second portion is entirely vinyl based composition.

13. The construction component of claim 4, wherein the construction component is a frame for a door.

14. The construction component of claim 4, wherein the construction component is a door.

15. A window frame comprising:

   a top frame jamb;

   two side frame jambs;

   said two side frame jambs each having upper and lower portions that are integrally formed, said upper portion being made of a first material, said lower portion being a durable moisture, decay, and insect resistant material made from a second material.

16. The frame of claim 15, wherein said second material is plastic.

17. The frame of claim 15, wherein said second material is vinyl.

18. The frame of claim 15, wherein said second material is metal.

19. The window frame of claim 15, wherein said window frame is a sidelight frame.

20. The window frame of claim 15, wherein said first material is a natural wood.

\* \* \* \* \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.   : 5,873,209
DATED        : February 23, 1999
INVENTOR(S)  : Richard C. Hagel

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

In column 2, line 44, please delete "or" and insert –of— in lieu thereof.

In column 3, line 44, claim 1, please delete "jam" and insert –jamb— in lieu thereof.

In column 4, line 17, claim 8, please delete "where in" and insert –wherein— in lieu thereof.

In column 4, line 19, claim 9, please delete "where in" and insert –wherein— in lieu thereof.

In column 4, line 21, claim 10, please delete "where in" and insert –wherein— in lieu thereof.

In column 4, line 23, claim 11, please delete "where in" and insert –wherein— in lieu thereof.

In column 4, line 25, claim 12, please delete "where in" and insert –wherein— in lieu thereof.

Signed and Sealed this

Twenty-seventh Day of July, 1999

Attest:

Q. TODD DICKINSON

*Attesting Officer*   *Acting Commissioner of Patents and Trademarks*

US005950391A

# United States Patent [19]

## Hagel

[11] **Patent Number:** 5,950,391

[45] **Date of Patent:** Sep. 14, 1999

[54] **FRAME WITH INTEGRAL ENVIRONMENT**

[75] Inventor: Richard C. Hagel, Nacogdoches, Tex.

[73] Assignee: **Burns, Morris & Stewart Limited Partnership**, Nacogdoches, Tex.

[21] Appl. No.: **09/130,160**

[22] Filed: **Aug. 6, 1998**

### Related U.S. Application Data

[63] Continuation of application No. 08/837,776, Apr. 22, 1997, Pat. No. 5,873,209, which is a continuation of application No. 08/612,757, Mar. 8, 1996, Pat. No. 5,661,943.

[51] Int. Cl.$^6$ .............................................. **E04C 2/38**
[52] U.S. Cl. ................. **52/656.4**; 52/204.66; 52/204.7; 52/170; 52/212; 52/515; 52/656.5
[58] Field of Search ........................ 52/656.2, 656.4, 52/656.7, 204.62, 204.66, 204.7, 170, 515, 212, 656.5

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 3,812,621 | 5/1974 | Ragland . |
| 5,074,092 | 12/1991 | Norlander . |
| 5,661,943 | 9/1997 | Hagel ...................................... 52/656.4 |
| 5,873,209 | 2/1999 | Hagel ...................................... 52/656.4 |

*Primary Examiner*—Christopher T. Kent
*Assistant Examiner*—Yvonne Horton-Richardson
*Attorney, Agent, or Firm*—Standley & Gilcrest LLP

[57] **ABSTRACT**

A construction component for improved moisture, decay and insect resistance. The component preferably includes a plurality of members of which certain portions are comprised of materials resistant to moisture, decay and insects. The resistant member(s) are integrally connected to wood portion(s) to provide a single, low cost structure.

**3 Claims, 1 Drawing Sheet**



**U.S. Patent**     **Sep. 14, 1999**     **5,950,391**



Fig. 1

Fig. 2

# FRAME WITH INTEGRAL ENVIRONMENT

This application is a continuation of U.S. patent application Ser. No. 08/837,776 filed Apr. 22, 1997, now U.S. Pat. No. 5,873,209 issued Feb. 23, 1999 which is a continuation of U.S. patent application Ser. No. 08/612,757 filed Mar. 8, 1996, now U.S. Pat. No. 5,661,943 issued Sep. 2, 1997.

## FIELD OF THE INVENTION

The invention relates to frames such as door or window frames, or other components such as porch posts, brickmolds, and casings, and particularly to components having integrally connected portions resistive to moisture, decay and insects.

## BACKGROUND OF THE INVENTION

The construction industry is under constant pressure to provide quality products at low cost. Door frames and other construction components are no exception.

During construction of a home or the like, an opening is left in the wall in which the door or window is installed. In some cases, a custom door frame is built in the door opening. After the door frame is built, the door is hung within the door frame. While this provides builders complete control, such a construction technique can be time consuming and costly. Measurements and construction must be very precise to accurately place the door frame into the opening and account for small variations in the door.

Another method of hanging frames is with the use of pre-hung doors or windows. In this case, a completed frame and door is provided to the builder. An example of an adjustable door frame assembly is found in U.S. Pat. No. 3,812,621. Thus, the frame and door are pre-matched for tighter fitting door or windows.

One known method of providing pre-built frames at a low cost is with the use of scrap lumber. Scrap lumber is produced when a defect, such as a knot hole or imperfect edge, is removed from a larger or parent piece of lumber. This allows the parent lumber to be sold as a higher quality piece than it otherwise would. The resulting scrap piece containing the defect is typically much smaller than its parent piece. The scrap lumber is then processed or recycled by removing the defect to produce a relatively small, but still good quality piece of wood fiber. These small pieces are then finger jointed at their ends and joined end to end to produce a single long piece, which is used to produce the door frame.

Norlander in U.S. Pat. No. 5,074,092 describes a technique for overcoming certain deficiencies with inexpensive lumber having a variety of knots and other defects. Quality veneers are assembled with cores of short end-to-end staves of solid lumber to produce a laminated wood door product having stability and good appearance.

While these techniques have produced low cost door and window frames, the use of wood in them causes the frames to be susceptible to moisture and insects. In the past, once water or termite damage has caused a portion of the frame to decay, that portion of the frame was replaced. Repair was performed while the frame was in place. A craftsman would cut out the decayed portion and replace it with another wood or plastic section. Thus, while costs were initially low, the end result was often expensive.

## SUMMARY OF THE INVENTION

The present invention is a component having durable, yet cost effective characteristics not found in the prior art. In the preferred embodiment, a construction component is comprised of a first section and second section. The second section is comprised of a material that is durable and moisture, decay and insect resistant. The first section is comprised of wood. The wood and durable portions are connected end to end with a glued finger joint or other mechanical connection to assemble the component. Associated hardware may also be added.

## BRIEF DESCRIPTION OF THE DRAWINGS

A better understanding of the present invention can be obtained when the following detailed description of the preferred embodiment is considered in conjunction with the following drawings, in which:

FIG. 1 is an isometric view of a door frame system according to a preferred embodiment of the present invention; and

FIG. 2 is a side view of a side portion of the door frame of FIG. 1.

## DETAILED DESCRIPTION OF PREFERRED EMBODIMENT

Referring now to FIG. 1, there is illustrated a door frame F embodying the principles of the present invention. The door frame F is comprised of spaced vertical side jambs 1 and 2 connected together at the top by a horizontal top jamb 3. One side jamb 1 includes a suitable number of hinge recesses 4 formed in it to mount hinges on while the opposite side jamb 2 is used to mount a strike plate. Each of the jambs 1, 2 and 3 have an L-shaped shoulder 5 on an interior surface for capturing a door.

Each of the side jambs 1 and 2 are formed from an upper wood portion 6 and a lower durable portion 7. The wood portions 6 are formed from a number of smaller wood pieces 6a–6g. Side jamb 1 includes wood pieces 6a, 6b and 6c and side jamb 2 includes wood pieces 6d, 6e, 6f and 6g. The wood pieces 6a–6g are formed from what originally were pieces of scrap lumber which have been processed or recycled to remove imperfections, such as knots, bark or uneven surfaces. As shown, the wood pieces 6a–6g are not necessarily of even length and the side jambs 1 and 2 may comparatively include an unequal number or wood pieces. However, the number of pieces 6a–6g is not so many as to jeopardize overall strength of the frame F.

Top jamb 3 is formed from a number of smaller wood pieces 3a and 3b in a manner similar to wood portion 6.

The durable portion 7 may be an extruded wood-based product, such as Strandex®, ERT®, TREX® or the like, which can be shaped using conventional wood processing techniques, painted or stained. The durable portion may also be made of plastic, vinyl, metal, and combinations of any of these materials. The durable portion 7 has the characteristics of being moisture, decay and insect resistant. Side jamb 1 includes a durable piece 7a and side jamb 2 includes a durable piece 7b. The placement of the durable portion 7 on the lower portion of the frame prevents all but the most severe weather and insect damage suffered by prior art door frames. The durable pieces 7a and 7b may be proportioned based on the expected exposure to adverse conditions such as rain, snow or insects. Thus, the assembly of the wood portion 6 and the durable portion 7 provides a durable, yet cost effective door frame. It is noted that other materials, such as plastic or similar extrusions, can be used for the durable pieces to achieve the principles of the present invention.

5,950,391

3

In the assembly of the side jambs 1 and 2, the durable pieces 7 are preferably connected end to end by a glued finger joint 10 to the wood portions 6. One of the joints 10 is illustrated more clearly in FIG. 2. Referring now to FIG. 2, wood piece 6g includes a number of fingers 11 protruding from an end face and durable piece 7b has a corresponding number of mated fingers 12 protruding from an adjacent end face. It should be understood that other wood joints are contemplated, such as edge gluing or their equivalents.

Referring back to FIG. 1, it is there illustrated that the wood pieces comprising the wood portion 6 are also finger jointed so that the assembly of the wood portion 6 with the durable portion 7 forms a complete side jamb 1 or 2.

In the assembly of the door frame F, the top jamb 3 is connected to the side jambs 1 and 2 with a corner joint 13. After assembly of the door frame F, the door frame F is ready for placement into a door opening of a wall. Thereafter, hinges may be attached at recesses 4 to the door frame F and a strike plate added to mount and receive a door. In use, the moisture, decay and insect resistant features of the door frame F prevent the problems associated with the prior art door frames.

It is noted that the use of the present invention is not limited to door frames. The invention may be used in window frames, garage door frames, porch posts, casings, brickmolds and other applications where wood is heavily subjected to weather or insects, but a cost effective solution is desired. Further, it is noted that solid stock lumber can be used in place of pieces 6a–6g without detracting from the principles of the present invention. It is also noted that further weather and insect protection can be afforded by chemically treating the wood pieces, although at a somewhat higher cost.

4

In describing the invention, reference has been made to a preferred embodiment and illustrative advantages of the invention. However, those skilled in the art and familiar with the disclosure of the present invention may recognize additions, deletions, modifications, substitutions, equivalents and other changes may be made without departing from the spirit of the invention.

What is claimed is:

1. A frame, comprising:

a top jam;

two side jambs having upper and lower portions that are integrally formed, said lower portion being a durable moisture, decay, and insect resistant material made from a second material.

2. A construction component comprising:

a first portion and a second portion that are integrally joined, said first portion being made of a first material, said second portion being a durable material made from a second material selected from the group consisting of materials other than wood, and materials other than wood in formulation with wood particles.

3. A window frame comprising:

a top frame jamb;

two side frame jambs;

said two side frame jambs each having upper and lower portions that are integrally formed, said upper portion being made of a first material, said lower portion being a durable material formulation comprised of plastic and cellulosic material.

\* \* \* \* \*

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
Burns Morris & Stewart, Limited Partnership

### DEFENDANTS
Endura Products, Inc.

(b) County of Residence of First Listed Plaintiff: **Nacogdoches**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Guilford**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Claude E. Welch
Post Office Box 1574
Lufkin, Texas 75902-1574
(936) 639-3311

Attorneys (If Known)
JUDGE LEONARD DAVIS
Unknown

[Stamp: FEB 11 2004]

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury— Product Liability | | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☒ 830 Patent | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
This is a patent infringement arising under the patent laws of the United States as set forth in Title 35 of the U.S. Code. This Court has jurisdiction over the issues in this matter pursuant to 28 U.S.C. Sections 1331 and 1338(a).

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY (See instructions):
None
JUDGE
DOCKET NUMBER

DATE: February 11, 2004
SIGNATURE OF ATTORNEY OF RECORD: [signature]

FOR OFFICE USE ONLY